MATTER OF PALMIERI

In DEPORTATION Proceedings

A-12302174

*Decided by Board February 19, 1963*

(1) An alien's application for adjustment of status under section 245 of the Immigration and Nationality Act, as amended, filed simultaneously with a petition for third-preference status at a time when the quota was open, but on which final action by the district director was completed after the quota had closed, may not be approved *nunc pro tunc* by the special inquiry officer in *de novo* consideration of application in deportation proceedings since as of the date of consideration an immigrant visa was not immediately available to the alien as required by subsection (a)(3) of section 245.

(2) The setting of the terms and conditions for voluntary departure is not within the jurisdiction of the Board of Immigration Appeals (8 CFR 244.2). (See also, *Matter of Irie*, Int. Dec. No. 1304.)

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251]—Nonimmigrant (temporary visitor for pleasure)—remained longer.

In a decision dated December 10, 1962, the special inquiry officer denied the respondent's request for adjustment of his status, *ante;* granted his application for voluntary departure; and provided for his deportation on the above-stated charge in the event of his failure to so depart. The appeal from that decision, which brings the case before this Board for consideration, will be dismissed.

The record relates to a 21-year-old single male alien, a native and citizen of Italy. He last entered the United States on or about October 5, 1961. He was then admitted as a temporary visitor for pleasure for a period which, with extensions, was to run until July 5, 1962. He has remained in the United States since the expiration of the temporary period of his admission without authority. Accordingly, his deportability on the above-stated charge is established.

On April 19, 1962, the respondent submitted an application for adjustment of his status under section 245 of the Immigration and Nationality Act, with accompanying documents. At the same time,

187

a petition to have him accorded third preference status under the Italian quota, filed in his behalf by his legally resident alien father, was also submitted. Both the application and the petition were received by the Service on the following day, April 20, 1962.

On June 20, 1962, the respondent was accorded a hearing and examination in connection with his application for adjustment of status. On the following day, June 21, 1962, he was notified that his father's petition in his behalf had been approved. On August 20, 1962, the District Director denied his application for adjustment of status under section 245 of the Immigration and Nationality Act, on the ground that the third preference portion of the Italian quota was then oversubscribed.

On November 26, 1962, deportation proceedings were instituted against the respondent by the issuance and service upon him of an order to show cause charging him with deportability on the above-stated ground. In the course of the hearing conducted thereunder, held on December 10, 1962, the respondent renewed his request for adjustment of status under section 245 of the Immigration and Nationality Act. It was denied by the special inquiry officer, for the same reason it was previously denied by the District Director.

The basis of the special inquiry officer's denial, as well as that of the District Director previously, was a Department of State Visa Office Bulletin in effect at the time of the decisions showing the third preference portion of the Italian quota to be oversubscribed for a period of approximately 10 years. The respondent concedes that this was the case.

However, he points to Department of State Visa Office Bulletin #93, dated April 2, 1962, showing that as of the date of its issuance the third preference portion of the Italian quota was current. He stresses that this situation continued until Visa Office Bulletin #93 (*supra*) was cancelled by the issuance of Department of State Visa Office Bulletin #96, dated June 4, 1962. The latter shows that as of July 1, 1962, the third preference portion of the Italian quota was unavailable to applicants or petitioners who had filed for such status subsequent to December 1, 1953.[1]

He argues that, on the basis of the foregoing, his application could have been granted at any time prior to July 1, 1962, because a visa was then available to him. He contends that his petition and application should have been processed within that period of time, and that failure in the administrative process in this respect was unduly preju-

---

[1] Department of State Visa Office Bulletin #104 of January 2, 1963, now sets this date as March 1, 1955.

dical to him. He requests that we approve his application, *nunc pro tunc*. This, however, we cannot do.

Section 245(a)(3) of the Immigration and Nationality Act provides that an alien's application for adjustment of status to that of one lawfully admitted for permanent residence cannot be granted unless "an immigrant visa is immediately available to him at the time his application is approved." The foregoing, however, establishes that we are confronted with precisely such a situation here. Under the law, therefore, the special inquiry officer had no alternative but to deny the application. The law is equally binding on this Board. It makes no provision for retroactive approval of the application.

Respondent's assertion that his visa petition and application for adjustment of status should have been processed between April 20, and July 1, 1962, overlooks the normal administrative steps required in the processing of said petition and application. The dates set forth above do not indicate any abnormal delay in this respect, and the respondent points to none.

His argument also overlooks the fact that since the provisions of sections 201(c) and 203(a) of the Immigration and Nationality Act (8 U.S.C. 1151 and 1153) apply under all quotas, the indication that a quota or a preference thereunder is current may not be construed to signify that such numbers are available for use at all times during the period for which requested or specified as being covered by the Department of State Visa Office Bulletin in question. Moreover, it overlooks the fact that while the respondent's petition and application were still subject to administrative adjudication, he had no established right to the future status he was seeking to obtain; and that the statute makes the granting of such application a matter wholly within the discretion of the Attorney General, acting through his duly designated representatives.[2] It further overlooks the fact that the law makes the Department of State responsible for the determination that the third preference portion of the Italian quota is or is not oversubscribed. Such a determination is binding on all the parties here involved, and this administrative tribunal is not the proper forum for review thereof.

8 CFR 245.2 does not, as claimed by respondent, authorize the special inquiry officer to review a District Director's denial of adjustment under the statute. Rather, it specifically precludes appeal from the District Director's denial and provides for *de novo* consideration by the special inquiry officer. 8 CFR 242.17 makes this abundantly clear.

The only other aspect of the case requiring comment is respondent's alternative request for voluntary departure. The special inquiry officer has, on the record before us, properly found respondent eligible

---

[2] *Fassilis* v. *Esperdy*, 301 F. 2d 429.

for such relief and granted it. There is no merit in respondent's request that we return his case to the special inquiry officer or the District Director with instructions to grant voluntary departure with an indefinite time for departing, on the basis of the equitable and humanitarian factors in the case previously pointed up. Under the regulations (8 CFR 244.2), the setting of the terms and conditions for voluntary departure is not properly a function of this Board.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.